UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DAVID L REED,<br><br>   Plaintiff,<br><br>   v.<br><br>BEAN, *et al.*<br><br>   Defendants. | Case No. 2:19-cv-00103-RFB-NJK<br><br>**ORDER** |

### I.   INTRODUCTION

Before the Court is Plaintiff David L Reed's Motion to Lift Stay. ECF No. 51. For the following reasons the motion is granted. This Order also provides a written final order as to the qualified immunity analysis of the Motion to Dismiss. ECF No. 29.

### II.   PROCEDURAL BACKGROUND

On September 24, 2021, the Court reopened, and stayed, discovery in this case until Plaintiff provided the Court with notice that he has a confirmed address and contact information. ECF No. 47. On October 21, 2022, Plaintiff filed the instant motion requesting that the Court lift the stay in this case, asserting that he has filed a notice of address. ECF Nos. 51, 52. Defendants filed a response in opposition. ECF No. 53. Plaintiff filed a reply. ECF No. 54.

### III.   DISCUSSION

Federal district courts have "wide discretion in controlling discovery." Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir. 1988).

Defendants argue that the stay in this case should not be lifted because they plan to appeal

the Court's September 24, 2021 order on qualified immunity grounds once the transcript is entered on the docket. The Court finds this reasoning unpersuasive.

First, Defendants were the ones that requested the Court grant them more time to conduct discovery. In fact, Defendants opposed Plaintiff's prior motion for summary judgment on the basis that more discovery was needed.

Second, Defendants seize on the form language in the Court's September 24, 2021 Order stating that the transcript of the September 24, 2021 hearing "will serve as the Written Opinion and Order of the Court." As a preliminary matter, minute orders are appealable final orders, as are docket entries that generally reflect a decision and order of a trial court. In Beaudry Motor Co. v. Abko Properties, Inc., the Ninth Circuit copied an image of a docket entry into its order and found that the "docket sheet entry complies with the requirements of Fed. R. Civ. P. 79(a)." 780 F.2d 751, 755 (9th Cir. 1986). The docket entry in Beaudry reads as follows: "For reasons set forth in Dft resp to Ptlf Mots for New Trial and to Amd Complt, ORD that Ptlf Mots are DENIED." Id. ("The entry briefly states the substance of the minute order as being an order denying BMC's post-judgment motions, and it sufficiently demonstrates the date upon which entry was made.").

Defendants, who appear to believe that the Court is yet to enter on the docket an order denying their motion to dismiss, are essentially arguing that the Court's minute order of September 24, 2021 was not an "entry" under Rule 79(a)(3). The Court disagrees, as the minute order meets the requirements of the Rule. On September 24, 2021, the Court entered a minute order summarizing the September 24, 2021 hearing attended by counsel for both parties noting that: "For the reasons stated on the record at the hearing it is ORDERED that 29 MOTION to Dismiss 25 Amended Complaint is GRANTED in part and DENIED in part." ECF No. 47. As the parties consented to electronic service, notice of entry was electronically mailed to one email associated with counsel for Plaintiff and four emails associated with counsel for Defendants on September 24, 2021. Id. The Court's minute order, not the transcript, is the operative entry that starts the appeals clock; it clearly states that Defendants' motion was denied in part and granted in part. ECF No. 47. The Court's order captured the substance of its decision, described who was meritorious and to what extent, and included a date of entry, satisfying the requirements of Rule 79(a)(3).

Finally, as to the transcript being entered on the docket: in <u>Owens v. Dzurenda</u>, this Court explained that the process for requesting and ordering transcripts in this District pursuant to the Local Rules does not contemplate the automatic filing of any transcript on the docket, following any hearing except evidentiary hearings in death penalty cases. 2:19-cv-00126-RFB-BNW, 2022 U.S. Dist. LEXIS 180471 (D. Nev. Sep. 30, 2022). In <u>Owens</u>, the defendants argued that "the window to file an appeal of that order began thirty days from the docketing of the hearing transcript rather than the order itself." <u>Id.</u> at *13. The Court disagreed, and summarized the transcript ordering process as follows:

> There is a process for ordering transcripts after a hearing in this jurisdiction, referenced in the Local Rules and detailed on this Court's website. The Defendants argument is premised on the assumption that all such orders will necessarily have transcripts completed and filed. However, there is no such requirement in the Federal Rules of Civil Procedure or the Local Rules of this District . . . . [T]he process [for ordering transcripts] would be redundant if the Local Rules required the filing of transcripts. Transcripts are not loaded to the docket as a matter of course. Transcripts are only loaded to the docket if a party orders a transcript and requests delivery in that manner, or if a presiding judge, at her discretion, orders the transcript be loaded. The Local Rules state that transcripts of court proceedings are only provided to the parties if they order and pay for the transcripts; these fees are non-taxable. LR 54-3. The only type of hearing where the Court itself <u>must</u> order a transcript is an Evidentiary Hearing in a Death Penalty case. LSR 5-3 (emphasis added). The Court website has a section explaining how a party or counsel may order a transcript of a court proceeding. Ordering Transcripts - District of Nevada, https://www.nvd.uscourts.gov/case-information/ordering-transcripts (last visited September 30, 2022).

<u>Id.</u> at *13-14.

Accordingly, the Court finds that Plaintiff has complied with the Court's September 24, 2021 order, and Defendants provide the Court with no persuasive basis for continuing the stay. Alternatively, the Court considers the Defendants arguments as a motion for clarification as to the reasoning and finality of its September 24 Order and Defendants' Motion to Dismiss [ECF No. 29]. To avoid any additional confusion around this issue, especially as to qualified immunity, the

Court issues this clarifying and final written ruling.[1]

The Court finds that Plaintiff has alleged the following facts. In 2018, Plaintiff was held at High Desert State Prison ("HDSP") as a pretrial detainee awaiting a preliminary hearing and trial in Clark County, Nevada. Plaintiff was being illegally held at HDSP, and he informed several HDSP employees of his illegal detention but did not receive a satisfactory response. Plaintiff grew depressed from the lack of response to his grievances and decided to commit suicide. On March 5, 2018, Plaintiff planned to kill himself, but before he could execute his plan, CO Ashcraft began the inmate count in Plaintiff's unit. Plaintiff's windows were blocked, so CO Ashcraft knocked on Plaintiff's door. Plaintiff ignored him. Ten minutes later, Defendant Lieutenant Glenn Fowler arrived. Defendant Fowler brought a camera to record the events.

Defendant Fowler ordered CO Pallalay to obtain a shield and place it in front of the food slot to Plaintiff's cell. He then instructed CO Ashcraft to open the food flap. The officers gained a visual of Plaintiff laying on his bunk. About three hours later, Defendants Bean and Fowler ordered CO Romero to return to Plaintiff's cell and to spray mace under Plaintiff's cell door. Plaintiff suffered mental and emotional distress as a result of being maced. Further, Defendants knew that Plaintiff has asthma, and placed him at great risk of having an asthma attack as a result of the mace.

Defendants Bean, Fowler, and Romero acted under color of law when they committed these acts against Plaintiff. Defendant Bean was the acting associate Warden of HDSP on the date of the incident, and he authorized the unnecessary use of force on Plaintiff. Defendant Fowler was present and one of the acting lieutenants at HDSP, and he did not prevent the use of excessive force against Plaintiff, despite having been in a position to do so. Defendant Romero was a senior corrections officer at HDSP on the date of the incident, and he was the officer who sprayed mace under Plaintiff's door.

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure

---

[1] Again, to avoid any confusion or misinterpretation, this is a final order as to the qualified immunity arguments of the Motion to Dismiss [29]. This order may be subject to an interlocutory appeal on the issue of qualified immunity.

- 4 -

1  to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion
2  to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and
3  are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Services,
4  Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

5        Plaintiff has alleged sufficient non-conclusory facts that, taken together with all reasonable
6  inferences, are "plausibly suggestive of a claim entitling [him] to relief" against the individual
7  defendants. Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). First, as to his sole
8  claim, Plaintiff has pled sufficient facts to suggest that the officers' use of force violated his
9  Fourteenth Amendment Due Process rights. Use of force in a custodial setting passes constitutional
10 muster when "applied in a good faith effort to maintain or restore discipline," and is not done
11 "maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S.
12 312, 320-21 (1986). Here, taking Plaintiff's factual allegations as true, Defendants' use of pepper
13 spray was not motivated by a "good faith effort to maintain or restore discipline." Id. Plaintiff
14 posed no security threat. The COs were able to gain visual confirmation of his presence for the
15 security count, and he was not making any combative or furtive gestures – he was merely laying
16 in his bunk. Further, he was maced *three hours* after his alleged insubordination. He posed no
17 threat to the officers. Each of these defendant officers played a role in this violation.

18       Defendants are not entitled to qualified immunity. An officer is not entitled to qualified
19 immunity if the alleged conduct would suggest or establish a constitutional violation and the law
20 was clearly established as to this type of violation when the alleged conduct occurred. Tarabochia
21 v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014). Qualified immunity must also be denied if there
22 is a genuine issue of disputed fact as to the alleged constitutional conduct. Sandoval v. Las Vegas
23 Metro. Police Dep't, 756 F.3d 1154, 1160 (9th Cir. 2014). As discussed above, Plaintiff has pled
24 sufficient facts to suggest that a constitutional violation occurred by each of the Defendants in this
25 case. Second, it is clearly established that the use of force (in this case a chemical agent) is not
26 lawful when it is not employed in a good faith attempt to gain inmate compliance. Albers, 475
27 U.S. at 320-21. Construing all inferences in favor of Plaintiff, a reasonable officer would know
28 that the belated and intentional use of pepper spray on an asthmatic, non-threatening and passive

inmate lying immobile in a bed is unlawful. Defendants' attempt to selectively cite portions of Plaintiff's allegations is contrary to the qualified immunity inquiry as such inquiry requires the Court to construe all factual inferences in Plaintiff's favor. <u>Tarabochia</u>, 766 F.3d at 1121. Moreover, the Court further finds that Defendants' arguments and assertions, at best, raise a genuine issue of disputed fact as to the interaction and the involvement of each of the Defendants, and qualified immunity must also be denied on that basis. <u>Sandoval</u>, 756 F.3d at 1160.

Therefore, the Court will lift the stay on discovery in this case.

### IV.   CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff David L Reed's Motion to Lift Stay (ECF No. 51) is **GRANTED**. The stay in this case is **LIFTED**.

**IT IS FURTHER ORDERED** that the Court clarifies and codifies its final order as to the qualified immunity arguments in Defendants' Motion to Dismiss [29]. Qualified immunity is denied as to all Defendants. This is a final order as to those arguments.

**IT IS FURTHER ORDERED** that discovery is **REOPENED** in this matter and must be completed by **July 1, 2024**. Both sides will be able to propound written discovery, and Defendants may depose Plaintiff. Defendants must also provide Plaintiff with any video footage of the incident.

Dispositive motions will be due **by August 5, 2024.**

**DATED:** March 30, 2024



_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**